UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

```
ANTHONY BUSH,

                        Plaintiff,

           -against-                         1:23-CV-5759 (LTS)

NEW YORK CITY; DEPARTMENT OF                 ORDER TO AMEND
CORR OF NYC,

                        Defendants.
```

LAURA TAYLOR SWAIN, Chief United States District Judge:

Plaintiff Anthony Bush, who is currently held in the Vernon C. Bain Center, in the Bronx New York, brings this *pro se* action seeking damages and naming the City of New York and the New York City Department of Correction ("DOC") as defendants.[1] He seems to allege that the defendants have violated his constitutional rights. The Court therefore construes Plaintiff's complaint as asserting claims under 42 U.S.C. § 1983 as well as under state law.

By order dated July 17, 2023, the Court granted Plaintiff's request to proceed *in forma pauperis* ("IFP"), that is, without prepayment of fees.[2] For the reasons set forth below, the Court grants Plaintiff leave to file an amended complaint within 60 days of the date of this order.

**STANDARD OF REVIEW**

The Prison Litigation Reform Act requires that federal courts screen complaints brought by prisoners who seek relief against a governmental entity or an officer or employee of a governmental entity. *See* 28 U.S.C. § 1915A(a). The Court must dismiss a prisoner's IFP complaint, or any portion of the complaint, that is frivolous or malicious, fails to state a claim

---

[1] Plaintiff filed his complaint while held in the Anna M. Kross Center on Rikers Island.

[2] Prisoners are not exempt from paying the full filing fee, even when they have been granted permission to proceed IFP. *See* 28 U.S.C. § 1915(b)(1).

upon which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief. 28 U.S.C. §§ 1915(e)(2)(B), 1915A(b); *see Abbas v. Dixon*, 480 F.3d 636, 639 (2d Cir. 2007). The Court must also dismiss a complaint if the Court lacks subject matter jurisdiction. *See* Fed. R. Civ. P. 12(h)(3).

While the law mandates dismissal on any of these grounds, the Court is obliged to construe *pro se* pleadings liberally, *Harris v. Mills*, 572 F.3d 66, 72 (2d Cir. 2009), and interpret them to raise the "strongest [claims] that they *suggest*," *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 474 (2d Cir. 2006) (internal quotation marks and citations omitted, emphasis in original). But the "special solicitude" in *pro se* cases, *id*. at 475 (citation omitted), has its limits – to state a claim, *pro se* pleadings still must comply with Rule 8 of the Federal Rules of Civil Procedure, which requires a complaint to make a short and plain statement showing that the pleader is entitled to relief.

Rule 8 requires a complaint to include enough facts to state a claim for relief "that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is facially plausible if the plaintiff pleads enough factual detail to allow the Court to draw the inference that the defendant is liable for the alleged misconduct. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). In reviewing the complaint, the Court must accept all well-pleaded factual allegations as true. *Id.* But it does not have to accept as true "[t]hreadbare recitals of the elements of a cause of action," which are essentially just legal conclusions. *Id.* (citing *Twombly*, 550 U.S. at 555). After separating legal conclusions from well-pleaded factual allegations, the Court must determine whether those facts make it plausible – not merely possible – that the pleader is entitled to relief. *Id.* at 679.

**BACKGROUND**

Plaintiff alleges that, between February 1, 2022, and March 28, 2023, and between June 18, 2023, and July 19, 2023, while he was held in the Anna M. Koss Center ("AMKC") on Rikers Island:

> unreasonable seizures of favorable exonerating evidence and [r]etaliation cause helping Andre Antrobus get out his mail and pick up legal work and evidence for months being threaten assaulted and robbed for favorable evidence for freedom and liberty also my property tota[l]ing to $450.00 from commissary and clothing items. If they take[] evidence I a[c]quire with no help by the saboteur pettifogger appointed forced counsel that lie on me and to me to undermine my defense (like Andre Antrobus been done and wors[e] where they send inmates to assault him every 2 weeks, open and [b]lock his mail, courts violating his rights as in firing counsel Tim Richards, Mr Appell, Mr Chessa and Buzielle who said she don't know the law and the rest lie to him and said they won't get witnesses or submit motions like 210.20 or Judges from Scirriano to Qiurh to Demic like and won't let him represent himself 40 times this time orally and writtenly submitted and last time 50 times. . . . They 80% of time block my mail, take my evidence and etc[,] [t]hreaten me saying the [District Attorney] said not to [h]elp hm or suffer the same treatment only once they sent a contract on me from D.O.C. employees to the inmates to attack me in 2 mod bathroom resulting to closed fist punches and falling hitting my head on sink (But not like Andre Antrobus every 2 weeks for 15 months confirmed by others) especially for 16 months putting in grievances and writs ex rel People Burse v. Schoroldi. [*sic*]

(ECF 1, at 4-5.)

Plaintiff describes his injuries as: "(1) [b]locking my defense taken evidence so I can't handle my case[;] (2) retaliation of assault putting contracts [b]y inmates paying them 4 stamps of Dubai paper plane[;] [and] (3) [e]xtreme [e]motional distress, P.T.S.D., S.T.S.D., mental anguish and physical." [*sic*] (*Id.* at 5.) Plaintiff seeks $700,000 in compensatory damages and the same amount in punitive damages.

**DISCUSSION**

A.  **Claims on behalf of Andre Antrobus**

The Court must dismiss Plaintiff's claims that he asserts on behalf of what appears to be another DOC prisoner, Andre Antrobus. The statutory provision governing appearances in

3

federal court, 28 U.S.C. § 1654, allows two types of representation: "that by an attorney admitted to the practice of law by a governmental regulatory body, and that by a person representing himself." *Eagle Assocs. v. Bank of Montreal*, 926 F.2d 1305, 1308 (2d Cir. 1991) (internal quotation marks and citation omitted). "[B]ecause *pro se* means to appear for one's self, a person may not appear on another person's behalf in the other's cause. A person must be litigating an interest personal to him." *Iannaccone v. Law*, 142 F.3d 553, 558 (2d Cir. 1998).

Plaintiff has not alleged any facts suggesting that he is an attorney. The Court therefore dismisses without prejudice Plaintiff's claims that he brings on behalf of Antrobus.

**B.      Claims arising from seizure of Plaintiff's property**

The Court interprets the complaint as asserting claims under Section 1983 in which Plaintiff alleges that members of the AMKC staff seized his property (including his money) without procedural due process of law. The Due Process Clause of the Fourteenth Amendment protects "against deprivations [of life, liberty, or property] without due process of law." *Rivera-Powell v. N.Y. City Bd. of Elections*, 470 F.3d 458, 464 (2d Cir. 2006) (internal quotation marks and citation omitted). "The fundamental requisite of due process of law is the opportunity to be heard . . . at a meaningful time and in a meaningful manner." *Goldberg v. Kelly*, 397 U.S. 254, 267 (1970) (internal quotation marks and citations omitted). Determining whether the process provided is adequate requires a weighing of: (1) the private interest affected; (2) the risk of erroneous deprivation and the probable value of further safeguards; and (3) the governmental interest at issue. *See Rivera-Powell*, 470 F.3d at 466 (quoting *Mathews v. Eldridge*, 424 U.S. 319, 335 (1976)).

A government official's random and unauthorized act does not violate a person's right to procedural due process if a meaningful postdeprivation remedy is available. *See Hudson v. Palmer*, 468 U.S. 517, 533 (1986); *Parratt v. Taylor*, 451 U.S. 527, 540-43 (1981), *overruled in*

*part on other grounds by Daniels v. Williams*, 474 U.S. 327 (1986); *Hellenic Am. Neighborhood Action Comm. v. City of New York*, 101 F.3d 877, 880 (2d Cir. 1996). Thus, a claim under Section 1983 asserting that a government official has deprived a person of a property interest is not cognizable in a federal district court if state law provides an adequate remedy for the deprivation of that interest. *See Zinermon v. Burch*, 494 U.S. 113, 127-39 (1990); *Hudson*, 468 U.S. at 533. Accordingly, when a plaintiff asserts such a claim, "the federal court's initial inquiry must be whether the state has provided adequate remedies to redress such unlawful acts." *Vialez v. N.Y.C. Hous. Auth.*, 783 F. Supp. 109, 114 (S.D.N.Y. 1991).

Because the government cannot predict precisely when a government official's random and unauthorized deprivation of a person's property interest will occur, it would be impossible to provide meaningful due process before the deprivation of the property interest. *See, e.g.*, *Hudson*, 468 U.S. at 532-33. Accordingly, New York State law provides postdeprivation remedies to cure such deprivations. *See Jenkins v. McMickens*, 618 F. Supp. 1472, 1474 (S.D.N.Y. 1985) (state tort action available to compensate detainee for alleged loss of property by city jail officials); *Cook v. City of New York*, 607 F. Supp. 702, 704 (S.D.N.Y. 1985) (detainee had meaningful postdeprivation remedy for loss of book through state action for negligence, replevin, or conversion); *Moreno v. New York*, 69 N.Y.2d 432 (1987) (alternative state remedies to recover seized property discussed); *Boyle v. Kelley*, 42 N.Y.2d 88, 90-91 (1977) (property wrongfully seized by officials during a search recoverable by a state replevin action or a state proceeding brought under Article 78 of the New York Civil Practice Law and Rules).

Plaintiff alleges no facts showing that he has pursued any of these state remedies, nor any facts showing that these remedies are inadequate. Thus, the Court dismisses Plaintiff's Section 1983 procedural due process claims arising from the alleged seizure of his property by AMKC

officials for failure to state a claim on which relief may be granted. *See* 28 U.S.C. § 1915(e)(2)(B)(ii); *Vialez*, 783 F. Supp. at 113 ("[I]f a plaintiff had an opportunity to contest a defendant's actions but failed to do so, there can be no claim for violation of his or her procedural due process rights under 42 U.S.C. § 1983.").

**C.     Claims against the DOC and the City of New York**

Plaintiff brings claims against the DOC; as an agency of the City of New York, however, the DOC is not a separate entity that can be sued. N.Y. City Charter ch. 17, § 396 ("[A]ll actions and proceedings for the recovery of penalties for the violation of any law shall be brought in the name of the city of New York and not in that of any agency, except where otherwise provided by law."); *Jenkins v. City of New York*, 478 F.3d 76, 93 n.19 (2d Cir. 2007); *see also Emerson v. City of New York*, 740 F. Supp. 2d 385, 395 (S.D.N.Y. 2010) ("[A] plaintiff is generally prohibited from suing a municipal agency."). The Court therefore dismisses Plaintiff's claims against the DOC for failure to state a claim on which relief may be granted. *See* § 1915(e)(2)(B)(ii).

The Court must also dismiss Plaintiff's claims under Section 1983 against the City of New York. When a plaintiff sues a municipality, such as the City of New York, under Section 1983, it is not enough for the plaintiff to allege that one of the municipality's employees or agents engaged in some wrongdoing. The plaintiff must show that the municipality itself caused the violation of the plaintiff's rights. *See Connick v. Thompson,* 563 U.S. 51, 60 (2011) ("A municipality or other local government may be liable under this section [1983] if the governmental body itself 'subjects' a person to a deprivation of rights or 'causes' a person 'to be subjected' to such deprivation." (quoting *Monell v. Dep't of Soc. Servs. of City of New York,* 436 U.S. 658, 692 (1978))); *Cash v. Cnty. of Erie,* 654 F.3d 324, 333 (2d Cir. 2011). In other words, to state a claim under Section 1983 against a municipality, the plaintiff must allege facts showing: (1) the existence of a municipal policy, custom, or practice; and (2) that the policy,

custom, or practice caused the violation of the plaintiff's constitutional rights. *Jones v. Town of East Haven*, 691 F.3d 72, 80 (2d Cir. 2012); *see Bd. of Cnty. Comm'rs of Bryan Cnty. v. Brown*, 520 U.S. 397, 403 (1997) (internal citations omitted).

Plaintiff does not allege any facts showing that a policy, custom, or practice of the City of New York caused a violation of his federal constitutional rights. The Court therefore dismisses Plaintiff's claims under Section 1983 against the City of New York for failure to state a claim on which relief may be granted. *See* § 1915(e)(2)(B)(ii). In light of Plaintiff's *pro se* status, however, the Court grants Plaintiff leave to file an amended complaint in which he alleges facts to state a claim under Section 1983 against the City of New York.

**D.     Claims against individuals**

The Court understands that Plaintiff may be attempting to assert claims under Section 1983 against individual members of the AMKC staff. To state a claim under Section 1983 against such an individual, a plaintiff must allege facts showing that that individual was directly and personally involved in an alleged constitutional deprivation. *See Spavone v. N.Y. State Dep't of Corr. Serv.*, 719 F.3d 127, 135 (2d Cir. 2013) ("It is well settled in this Circuit that personal involvement of defendants in the alleged constitutional deprivations is a prerequisite to an award of damages under § 1983." (internal quotation marks omitted)). A defendant may not be held liable under Section 1983 solely because that defendant employs or supervises a person who violated the plaintiff's rights. *See Iqbal*, 556 U.S. at 676 ("Government officials may not be held liable for the unconstitutional conduct of their subordinates under a theory of *respondeat superior*."). Rather, "[t]o hold a state official liable under § 1983, a plaintiff must plead and prove the elements of the underlying constitutional violation directly against the official[.]" *Tangreti v. Bachmann*, 983 F.3d 609, 620 (2d Cir. 2020).

Plaintiff names no individuals as defendants, and alleges no facts showing how any individual member of the AMKC staff was directly and personally involved in violations of Plaintiff's federal constitutional rights. In light of Plaintiff's *pro se* status, the Court grants Plaintiff leave to file an amended complaint in which he names individual members of the AMKC staff as defendants and alleges facts showing those defendants' direct and personal involvement in the alleged violations of his constitutional rights.

### E.      Claims involving Plaintiff's mail

The Court liberally construes Plaintiff's allegations as asserting that members of the AMKC staff interfered with his mail, including his legal mail; such allegations assert both an access-to-courts claim and a general mail-tampering claim under Section 1983. These types of claims are grounded in a prisoner's First Amendment rights to "adequate, effective and meaningful" access to the courts and to the free flow of incoming and outgoing mail. *Bounds v. Smith*, 430 U.S. 817, 822 (1977), *abrogated on other grounds*, *Lewis v. Casey*, 518 U.S. 343 (1996); *Davis v. Goord*, 320 F.3d 346, 351 (2d Cir. 2003). "[C]ourts have consistently afforded greater protection to legal mail than to non-legal mail, as well as greater protection to outgoing mail than to incoming mail." *Davis*, 320 F.3d at 351 (citing *Thornburgh v. Abbott*, 490 U.S. 401, 413 (1989)).

#### 1.      Access to the courts

Prisoners have a "constitutional right of access to the courts [that] gives rise to a number of derivative rights, including the right to access legal materials to prepare a case, and the right of indigent inmates to be provided with paper and pens to draft legal documents and stamps to mail them." *Collins v. Goord*, 581 F. Supp. 2d 563, 573 (S.D.N.Y. 2008) (citing *Bounds*, 430 U.S. at 824-28). Protecting these rights "requires prison authorities to assist inmates in the preparation and filing of meaningful legal papers by providing prisoners with adequate law libraries or

8

adequate assistance from persons trained in the law." *Bourdon v. Loughren,* 386 F.3d 88, 92–93 (2d Cir. 2004) (quoting *Bounds,* 430 U.S. at 821, 828 (internal quotation marks omitted)). Assistance from prison authorities, however, is "only the means for ensuring a reasonably adequate opportunity to present claimed violations of fundamental constitutional rights to the courts." *Casey,* 518 U.S. at 351 (internal quotation marks and citation omitted).

To state a claim for denial of access to the courts, a plaintiff must allege facts showing that: "the defendant took or was responsible for actions that hindered [a plaintiff's] efforts to pursue a legal claim." *Davis*, 320 F.3d at 351 (internal quotation marks and citation omitted); *see Christopher v. Harbury*, 536 U.S. 403, 415 (2002). A plaintiff must show actual injury with regard to his legal claim – "actual prejudice with respect to contemplated or existing litigation, such as the inability to meet a filing deadline or to present a claim." *Casey*, 518 U.S. at 348 (internal quotation marks and citation omitted). To demonstrate actual injury, a plaintiff must allege: (1) a valid underlying cause of action separate from the right-of-access claim; and (2) frustration or hindrance of the litigation caused by the defendant's actions. *See Harbury*, 536 U.S. at 415. A mere "delay in being able to work on one's legal action or communicate with the courts does not rise to the level of a constitutional violation." *Jermosen v. Coughlin*, 877 F. Supp. 864, 871 (S.D.N.Y. 1995) (citing *Jones v. Smith*, 784 F.2d 149, 151-52 (2d Cir. 1986)). Furthermore, when a prisoner with appointed counsel claims that prison officials hindered his efforts to defend himself or pursue other legal claims, "he must show that, on the facts of his case, the provision of counsel did not furnish him with the capability of bringing his challenges before the courts." *Bourdon*, 386 F.3d at 98.

Here, Plaintiff may be implying that his criminal defense or his efforts to appeal his conviction, or both, have been hindered as a result of alleged interference by members of the

9

AMKC staff. Plaintiff does not, however, allege any facts suggesting that he is pursuing a "'nonfrivolous,' 'arguable' underlying claim," which has been hampered as a result of delays or withholding of his mail. *Harbury*, 536 U.S. at 415. Furthermore, to the extent that Plaintiff is represented by counsel in his criminal proceedings or in any postconviction matter, he does not allege facts showing why his counsel was unable to assert his legal claims on his behalf. *See Bourdon*, 386 F.3d at 98. Because Plaintiff does not allege the existence of a valid nonfrivolous underlying cause of action, and he does not explain why his attorney could not press his argument for exoneration in his criminal case or postconviction proceedings, he fails to state an access-to-the-courts claim under the First Amendment.

The Court grants Plaintiff leave to file an amended complaint naming as defendants the individual members of the AMKC staff whom he alleges violated his rights, and alleging additional facts to state a claim against those individuals under Section 1983 with respect to the denial of his right to access to the courts under the First Amendment. For such a claim, Plaintiff must allege facts suggesting that he was hindered from pursuing an arguably meritorious legal claim for which he is not represented by counsel.

### 2. Mail tampering

To state a claim based on general mail tampering under the First Amendment, a prisoner must allege that the incidents of mail tampering: "(1) . . . suggest[] an ongoing practice of censorship unjustified by a substantial government interest, or (2) . . . [have] unjustifiably chilled the prisoner's right of access to the court or impaired his legal representation. *Davis*, 320 F.3d at 351. "[A]n isolated incident of mail tampering is usually insufficient to establish a constitutional violation." *Id.* at 351. As few as two incidents of mail tampering, however, may constitute a First Amendment violation if indicative of "regular" and "unjustifiable" interference with a prisoner's mail. *Id*. at 351; *see Washington v. James*, 782 F.2d 1134, 1139 (2d Cir. 1986).

10

Plaintiff does not allege enough facts to suggest that members of the AMKC staff interfered or tampered with his mail in a manner that rises to the level of a constitutional violation. He asserts that, "80% of [the] time [they] block my mail" (ECF 1, at 5), but he does not state who was involved with the mail tampering and how often this has happened relative to the time period of the alleged incidents. Nor does Plaintiff detail facts suggesting that the alleged "blocking" was the result of unjustified government censorship or tampering. Without more detail, Plaintiff's allegations do not suggest that members of the AMKC staff subjected him to regular and unjustifiable interference with his mail.

The Court grants Plaintiff leave to file an amended complaint naming as defendants the individual members of the AMKC staff whom he alleges violated his rights, and alleging additional facts sufficient to state a claim under Section 1983 of mail tampering against those defendants. In support of such a claim, he must allege facts indicating that the named individual defendants subjected him to regular and unjustifiable interference with his mail. Plaintiff must specifically say how many times his mail was "blocked," the manner in which it was "blocked" (as to incoming and outgoing mail), and provide all the dates when this happened.

**F.    Claims of retaliation**

Throughout his complaint, Plaintiff suggests that members of the AMKC staff have been violating his and other prisoners' rights in retaliation for providing assistance to Antrobus. Plaintiff's assertions could be read as an attempt to assert a First Amendment retaliation claim. To state such a claim, a prisoner must allege: "(1) that the speech or conduct at issue was protected, (2) that the defendant took adverse action against the [prisoner], and (3) that there was a causal connection between the protected [conduct] and the adverse action." *Holland v. Goord*, 758 F.3d 215, 225 (2d Cir. 2014) (internal quotation marks and citation omitted, second alteration in original). An adverse action is any "retaliatory conduct that would deter a similarly

11

situated individual of ordinary firmness from exercising his or her constitutional rights." *Davis*, 320 F.3d at 353 (internal quotation marks and citation omitted). "In order to satisfy the causation requirement, allegations must be sufficient to support the inference that the speech [or conduct] played a substantial part in the adverse action." *Id.* at 354 (internal quotation marks and citation omitted). For example, "[a] plaintiff can establish a causal connection that suggests retaliation by showing that protected activity was close in time to the adverse action." *Espinal v. Goord,* 558 F.3d 119, 129 (2d Cir. 2009); *see also Mateo v. Fischer,* 682 F. Supp. 2d 423, 435 (S.D.N.Y. 2010) (endorsing incorporation of circumstantial evidence of causation "where the adverse action occurs soon after the protected activity," and holding that, where a false misbehavior report was filed one day after a prisoner filed a grievance, the causation requirement was met) (citation omitted).

Nevertheless, "because virtually any adverse action taken against a prisoner by a prison official – even those otherwise not rising to the level of a constitutional violation – can be characterized as a constitutionally proscribed retaliatory act," the United States Court of Appeals for the Second Circuit has instructed that district courts must "approach prisoner retaliation claims with skepticism and particular care." *Dolan v. Connolly*, 794 F.3d 290, 295 (2d Cir. 2015) (internal quotation marks and citation omitted); *see also Graham v. Henderson*, 89 F.3d 75, 79 (2d Cir. 1996) ("Retaliation claims by prisoners are prone to abuse since prisoners can claim retaliation for every decision they dislike." (internal quotation marks and citation omitted)). Accordingly, First Amendment retaliation claims must be "supported by specific and detailed factual allegations," and may not be stated "in wholly conclusory terms." *Dolan*, 794 F.3d at 295 (internal quotation marks and citation omitted).

Here, Plaintiff does not provide sufficient facts to suggest a viable claim for retaliation. It is unclear from Plaintiff's complaint that, among other alleged conduct, by his assisting Antrobus with "get[ting] out his mail and pick[ing] up legal work" (ECF 1, at 4), Plaintiff engaged in any protected activity under the First Amendment. More importantly, Plaintiff does not allege facts sufficient to suggest a causal connection between that conduct and the alleged adverse actions taken against him. *See Espinal,* 558 F.3d at 129. He also does not allege which members of the AMKC staff allegedly retaliated against him. Plaintiff thus fails to state a claim under Section 1983 of First Amendment retaliation.

The Court grants Plaintiff leave to allege facts in an amended complaint sufficient to state a claim of retaliation under Section 1983. Specifically, he must allege facts showing that he engaged in protected conduct under the First Amendment and that there was a causal connection between his protected activity and any adverse action. In his amended complaint, Plaintiff should also provide facts explaining the alleged assistance that he provided to Antrobus, including the dates of that conduct, how his assisting Antrobus led to the alleged violations of his rights, and, most importantly, who retaliated against him.

**G.  Claims of conspiracy**

The Court understands Plaintiff's complaint as asserting claims of conspiracy under Section 1983 arising from members of the AMKC staff's alleged conspiracy with other AMKC prisoners to assault Plaintiff. The complaint, however, does not allege facts sufficient to state a claim of conspiracy under that statute. To state such a claim, a plaintiff must show "(1) an agreement between two or more state actors or between a state actor and a private entity; (2) to act in concert to inflict an unconstitutional injury; and (3) an overt act done in furtherance of that goal causing damages." *Pangburn v. Culbertson*, 200 F.3d 65, 72 (2d Cir. 1999). Vague and unsupported assertions of a claim of conspiracy will not suffice to state a claim upon which relief

13

can be granted. *See, e.g., Stoner v. Young Concert Artists, Inc.*, 626 F. App'x 293, 296 (2d Cir. 2015) (summary order); *Wang v. Miller*, 356 F. App'x 516, 517 (2d Cir. 2009) (summary order); *Webb v. Goord*, 340 F.3d 105, 110-11 (2d Cir. 2003); *Boddie v. Schnieder*, 105 F.3d 857, 862 (2d Cir. 1997); *Polur v. Raffe*, 912 F.2d 52, 56 (2d Cir. 1990).

Plaintiff's allegations about a conspiracy are conclusory, vague, and lack detail. Plaintiff alleges, without factual support, that DOC employees in the AMKC conspired with other prisoners in that facility to assault Plaintiff. Such allegations, without more factual support, fail to state a claim of conspiracy under Section 1983. The Court grants Plaintiff leave to file an amended complaint in which he alleges facts sufficient to state such a claim; he must name as defendants those individuals who allegedly conspired against him (AMKC officials and prisoners) and allege specific facts showing how those defendants conspired with each other to violate his federal constitutional rights.

## LEAVE TO AMEND

Plaintiff proceeds in this matter without the benefit of an attorney. Federal district courts generally should grant a self-represented plaintiff an opportunity to amend a complaint to cure its defects, unless amendment would be futile. *See Hill v. Curcione*, 657 F.3d 116, 123-24 (2d Cir. 2011); *Salahuddin v. Cuomo*, 861 F.2d 40, 42 (2d Cir. 1988). Indeed, the Second Circuit has cautioned that district courts "should not dismiss [a *pro se* complaint] without granting leave to amend at least once when a liberal reading of the complaint gives any indication that a valid claim might be stated." *Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000) (quoting *Gomez v. USAA Fed. Sav. Bank*, 171 F.3d 794, 795 (2d Cir. 1999)). Because Plaintiff may be able to allege additional facts to state a valid claim under Section 1983, the Court grants Plaintiff 60 days' leave to amend his complaint to detail his claims.

Plaintiff is granted leave to amend his complaint to provide more facts about his claims. First, Plaintiff must name as the defendant(s) in the caption[3] and in the statement of claim those individuals who were allegedly involved in the deprivation of his federal rights. If Plaintiff does not know the name of a defendant, he may refer to that individual as "John Doe" or "Jane Doe" in both the caption and the body of the amended complaint.[4] The naming of "John Doe" or "Jane Doe" defendants, however, does *not* toll the three-year statute of limitations period governing Plaintiff's claims under Section 1983, and Plaintiff shall be responsible for ascertaining the true identity of any "John Doe" or "Jane Doe" defendants and amending his complaint to include the identity of any "John Doe" or "Jane Doe" defendants before the statute of limitations period expires. Should Plaintiff seek to add a new claim or party after the statute of limitations period has expired, he must meet the requirements of Rule 15(c) of the Federal Rules of Civil Procedure.

In the "Statement of Claim" section of the amended complaint form, Plaintiff must provide a short and plain statement of the relevant facts supporting each claim against each defendant. If Plaintiff has an address for any named defendant, he must provide it. Plaintiff should include all of the information in the amended complaint that he wants the Court to consider in deciding whether the amended complaint states a claim for relief. That information should include:

---

[3] The caption is located on the front page of the complaint. Each individual defendant must be named in the caption. Plaintiff may attach additional pages if there is not enough space to list all of the defendants in the caption. If Plaintiff needs to attach an additional page to list all defendants, he should write "see attached list" on the first page of the amended complaint. Any defendants named in the caption must also be discussed in Plaintiff's statement of claim.

[4] For example, a defendant may be identified as: "Correction Officer John Doe #1 on duty on August 31, 2023, at the Sullivan Correctional Facility clinic, during the 7 a.m. to 3 p.m. shift."

    a) the names and titles of all relevant people;

    b) a description of all relevant events, including what each defendant did or failed to do, the approximate date and time of each event, and the general location where each event occurred;

    c) a description of the injuries Plaintiff suffered; and

    d) the relief Plaintiff seeks, such as money damages, injunctive relief, or declaratory relief.

Essentially, Plaintiff's amended complaint should tell the Court: who violated his federally protected rights; how, when, and where such violations occurred; and why Plaintiff is entitled to relief.

Because Plaintiff's amended complaint will completely replace, not supplement, the original complaint, any facts or claims that Plaintiff wants to include from the original complaint must be repeated in the amended complaint. Plaintiff must not raise in his amended complaint any claims that the Court has dismissed in this order without granting leave to replead.

## CONCLUSION

The Court grants Plaintiff leave to file an amended complaint that complies with the standards set forth above. Plaintiff must submit the amended complaint to this Court's Pro Se Intake Unit within 60 days of the date of this order, caption the document as an "Amended Complaint," and label the document with docket number 1:23-CV-5759 (LTS). An Amended Civil Rights Complaint form is attached to this order. No summons will issue at this time. If Plaintiff fails to comply within the time allowed, and he cannot show good cause to excuse such failure, the Court will issue an order dismissing Plaintiff's claims that he asserts on Antrobus's behalf without prejudice, dismissing Plaintiff's claims under federal law that he asserts on his own behalf for failure to state a claim on which relief may be granted, *see* 28 U.S.C.

§ 1915(e)(2)(B)(ii), and declining to consider, under its supplemental jurisdiction, Plaintiff's claims that he asserts on his own behalf under state law, *see* 28 U.S.C. § 1367(c)(3).

The Court certifies under 28 U.S.C. § 1915(a)(3) that any appeal from this order would not be taken in good faith, and therefore IFP status is denied for the purpose of an appeal. *Cf. Coppedge v. United States*, 369 U.S. 438, 444-45 (1962) (holding that an appellant demonstrates good faith when he seeks review of a nonfrivolous issue).

SO ORDERED.

Dated:   August 28, 2023
         New York, New York

                                             /s/ Laura Taylor Swain
                                              LAURA TAYLOR SWAIN
                                           Chief United States District Judge